# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WILLIAM T. HARRINGTON, III, *et al.*,
and all others similarly situated,

       Plaintiffs,

     vs.                 No. CIV 01-0531 LH/WDS-ACE

CITY OF ALBUQUERQUE, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Class Certification

(Docket No. 95). The Court, having considered the pleadings submitted by the parties, the arguments

of counsel, the applicable law, and otherwise being fully advised, finds that the motion is **well taken**

and should be **granted**.

### I. Background

The Plaintiffs here are blue collar workers employed by the Defendant City of Albuquerque.

While most of their co-workers belong to the American Federation of State, County and Municipal

Employees (AFSCME) Local 624, which is also a Defendant, the Plaintiffs are not members of the

union. The union has been recognized by the City as the exclusive bargaining representative of City

employees for the purposes of collective bargaining, and represents the Plaintiffs in that capacity

despite their decision not to join the union.

The Albuquerque City Council adopted a Fair Share Resolution, which allowed the union to deduct what are called fair share fees from non-members of the union once half of the members of the collective bargaining unit were shown to be members of the union.  The City and the union then entered into a Memorandum of Understanding that put the fair share agreement into effect. Pls.' Compl., Ex. 1.  Fair share fees compensate the union for the cost of its collective bargaining activities, and amount to the non-member employee's proportionate share of the union's cost of negotiating and administering the collective bargaining agreement and adjusting grievances and disputes of bargaining unit employees.  Pursuant to the Memorandum of Understanding, these fees could not exceed seventy-five percent of union dues.  *Id.* at 2.

*Wessel, v. City of Albuquerque,* No. CIV 00-0065 LH/KBM-ACE was filed by plaintiffs not party to this suit, alleging that the collection of these fees was unlawful and violated their rights in a number of respects.  *See generally Wessel v. City of Albuquerque*, 299 F.3d 1186 (10th Cir. 2002). The suit sought declaratory and injunctive relief as well as damages.  *Id.*  Originally a class action, the *Wessel* plaintiffs voluntarily dismissed their class allegations and motion for class certification when this Court denied their motion to amend their complaint to add the sixth claim for relief for punitive damages.  Order of Dismissal of Class Claims (Docket No. 114 in No. CIV 00-0065 LH/KBM-ACE).  The Court granted in part the parties' cross-motions for summary judgment in *Wessel*, entirely disposing of the case.  Mem. Op. and Order (Docket No. 116 in No. CIV 00-0065 LH/KBM-ACE).  The parties then appealed, and the United States Court of Appeals for the Tenth Circuit affirmed this Court in part, reversed in part, and remanded for further proceedings.  *Wessel*, 299 F.3d at 1196, 1199.

The present suit was filed as a class action and included the sixth claim for relief for punitive damages.  It also includes the first five claims for relief in the *Wessel* suit against the same Defendants, although the Plaintiffs stipulated to the dismissal of their first and fourth claims in response to the Tenth Circuit's opinion in *Wessel*.  Stipulation and Order of Dismissal of First and Fourth Claims for Relief (Docket No. 74).  The parties have also stipulated that the Court's disposition of the Plaintiffs' third claim for relief in *Wessel* should apply here as well, provided that the transcript of the evidentiary hearing on remand and the post-hearing briefs are made a part of the record in this case as well.[1]

The Plaintiffs moved for partial summary judgment, requesting the same relief awarded by the Court of Appeals in *Wessel*.  Pls.' Mot. for Partial Summ. J. (Docket No. 93).  They have also moved for class certification pursuant to FED. R. CIV. P. 23.  Mot. for Class Certification (Docket No. 95).  The Defendants moved for summary judgment on all of the Plaintiffs' claims.  Mot. of Union Defs. for Summ. J. (Docket No. 97); Mot. of City Defs. for Joinder in Mot. for Summ. J. (Docket No. 99).

## II. Legal Standard and Analysis

### A.  Rule 23(a) Prerequisites

"When a person sues or is sued as a representative of a class, the court must--at an early practicable time--determine by order whether to certify the action as a class action."  FED. R. CIV. P. 23(c)(1)(A).  There are four prerequisites that a class of plaintiffs must meet before a suit may be

---

[1] The Court finds that proceeding in this manner will serve the interests of time and judicial economy, and orders that the aforementioned documents be made a part of the record in this case as well.

certified as a class action. FED. R. CIV. P. 23(a). First, "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Second, "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Third, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Finally, "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

The Defendants only oppose the motion for class certification on the last ground, that the named plaintiffs and their attorneys will not fairly and adequately protect the interests of the class members, though the Defendants argue that the reasoning that supports this point also precludes class certification to the extent that other Rule 23(a) prerequisites overlap with the adequacy of representation requirement. Although the first three prerequisites have essentially been conceded by the Defendants, "[a] party seeking to certify a class is required to show, under a strict burden of proof, that all the requirements of [Rule] 23(a) are clearly met." *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (internal quotation marks and citation omitted). In deciding a motion for class certification, courts should err in favor of certification since the decision is subject to later modification. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969).

## 1. Implied Prerequisites

In addition to the four explicit prerequisites enumerated in FED. R. CIV. P. 23(a), courts have established two additional, implicit requirements for class certification. "Essential, but implied, prerequisites are that a defined or identifiable class exists and that the class representatives are members of the class." *Stambaugh v. Kansas Dep't of Corrections*, 151 F.R.D. 664, 671 (D. Kan.

1993).

The putative class in this case comprises "all City employees represented by Local 624 who are or were not members, at some time since fair share deductions began, and have had and/or will have union fees deducted from their wages, except for the *Wessel* plaintiffs." Pls.' Compl. (Docket No. 1) ¶ 15. "While the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action," *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986), it appears as though every member, with the exception of those who have not yet had fair share fees deducted from their wages but will in the future, can be specifically identified at this stage in the litigation. Even those potential class members who cannot now be identified can be once the fees are deducted, as the Defendant City will be in possession of employment and payroll documents identifying them. The contemplated class is therefore "sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." *Id.*

As to the second prong, the Defendants have stipulated that the named Plaintiffs are members of the proposed class. Initial Pretrial Report (Docket No. 68) ¶¶ 3, 18. The class therefore meets the case law requirements implicit in FED. R. CIV. P. 23(a).

## 2. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "There is, however, no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). "[I]mpracticability is dependent not on any arbitrary limit but upon the circumstances surrounding the case." *Horn v.*

*Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977).

The Plaintiffs aver that the putative class includes more than three hundred members, and is therefore sufficiently numerous for class certification.  The Defendants do not oppose certification on this ground, and have stipulated that the potential class will number approximately 300 members. Initial Pretrial Report (Docket No. 68) ¶¶ 10, 18.  Moreover, classes are regularly certified with fewer members.  *See, e.g., Horn*, 555 F.2d at 276 (reversing denial of motion for certification of class of forty-six plaintiffs); *Aguirre v. Bustos*, 89 F.R.D. 645, 647-48 (D.N.M. 1981) (finding class "expected to exceed 100 members" was sufficiently numerous for certification); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991) (finding class of approximately fifty members sufficiently numerous for certification), *rev'd on other grounds*, 42 F.3d 1560 (10th Cir. 1994).  The putative class in the present case is "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).


3.  Commonality

The second prerequisite is that "there are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Although this provision of the rule is written in the plural, *id.*, "commonality requires only a single issue common to the class."  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).  "Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist."  *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983).

In this case, each claim is based upon the actions of the Defendants in collecting the fair share fees from the Plaintiffs, and not the acts of the Plaintiffs.  Each class member's claim is therefore

common to the entire class.  Furthermore, the Plaintiffs allege that the entire class was subjected to the same unconstitutional practices, which is sufficient to meet the commonality requirement.  "That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (internal quotation marks and citations omitted).[2]

The commonality requirement must also be viewed in light of its alternate purpose of ensuring that the interests of the absent class members will be fairly and adequately represented by the Plaintiffs. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  In this regard, the Defendants argue that "many of the considerations demonstrating that plaintiffs do not satisfy the requirements of Rule 23(a)(4) also demonstrate that plaintiffs do not satisfy Rules 23(a)(2) and (a)(3)."  Union Defs.' Opp'n to Pls.' Mot. for Class Certification (Docket No. 106) at 5 n.3.

That the commonality prerequisite of FED. R. CIV. P. 23(a)(2) tends to merge with the adequacy of representation requirement of FED. R. CIV. P. 23(a)(4), *Gen. Tel. Co. of the Southwest*, 457 U.S. at 158 n.13, does not mean that the square peg of the Defendants' adequacy of representation argument necessarily fits the round hole to the commonality prerequisite, however. To the extent that the named Plaintiffs' claims are required to share common questions of law or fact to ensure that the absent class members' interests are adequately protected, the Defendants' argument fails.

The Defendants argue that the named Plaintiffs have an insufficient knowledge of the claims

---

[2] The Court of Appeals made reference to certification pursuant to FED. R. CIV. P. 23(b)(2) because it found that the district court had improperly used the predominance standard of FED. R. CIV. P. 23(b)(3) to evaluate the commonality prerequisite of FED. R. CIV. P. 23(a)(2).  The plaintiffs in *Adamson* argued that their claims satisfied the commonality requirement because they sought the application of a common policy, and the Court agreed. *Adamson v. Bowen*, 855 F.2d at 676.  Its discussion is therefore applicable in this case as well.

in their complaint to be adequate class representatives and have abdicated control over the litigation

to their counsel.  That in no way establishes that the class members' claims do not have questions

of law or fact in common with those of the named Plaintiffs or negates the Plaintiffs' commonality

showing.  Indeed, any argument that those claims somehow mean that there are not "questions of

law or fact common to the class," FED. R. CIV. P. 23(a)(2), is frivolous.  The Plaintiffs' claims present

questions of both law and fact sufficiently common to the class to ensure that the absent class

members' interests are adequately protected.


4.  Typicality

The third prerequisite to class certification is that "the claims or defenses of the representative

parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  "The claims of

the representative and the class need not be identical, though; different fact patterns or amounts of

damages will not necessarily defeat typicality." *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121

F.R.D. 417, 424 (D.N.M 1988).  "[D]iffering fact situations of class members do not defeat typicality

under Rule 23(a)(3) so long as the claims of the class representative and class members are based on

the same legal or remedial theory." *Adamson*, 855 F.2d at 676.

The potential class members, like the named Plaintiffs, are not members of the union that

represents them for the purpose of collective bargaining and are required to pay fair share fees to the

union.  The Plaintiffs' claims involve the fair share notice, the indemnification clause of the Fair

Share Resolution, the collective of the fair share fees, and the amounts thereof.  Each class member's

claims are therefore clearly based upon the same theories of recovery.

With regard to this prerequisite, the Defendants again argue only that typicality prerequisite

of FED. R. CIV. P. 23(a)(3) tends to merge with the adequacy of representation requirement of FED. R. CIV. P. 23(a)(4), and that "many of the considerations demonstrating that plaintiffs do not satisfy the requirements of Rule 23(a)(4) also demonstrate that plaintiffs do not satisfy Rules 23(a)(2) and (a)(3)."  Union Defs.' Opp'n to Pls.' Mot. for Class Certification (Docket No. 106) at 5 n.3.  The class members' lack of knowledge of the claims asserted, the factual basis therefor, or the relief sought by their complaint in no way indicates that the named Plaintiffs' claims are not typical of the class, however.

The Defendants presented this argument in the context of the adequacy of representation prerequisite of FED. R. CIV. P. 23(a)(4), and most courts analyze it in the same manner.  *See, e.g., Pilots Against Illegal Dues v. Air Line Pilots Assoc.*, 938 F.2d 1123, 1134 (10th Cir. 1991); *Gilpin v. Am. Fed'n of State, County, and Mun. Employees, AFL-CIO*, 875 F.2d 1310, 1313 (7th Cir. 1989). However, because the named Plaintiffs' claims must be typical of those of the class to the interests of the class members will be fairly and adequately protected in their absence, *Gen. Tel. Co. of the Southwest*, 457 U.S. at 158 n.13, the Defendants argument bears on the typicality issue as well.[3]  To

---

[3] While the Defendants are correct that conflicts between named plaintiffs and class members demonstrate that the claims of the named plaintiffs are not typical of those of the class for the purposes of FED. R. CIV. P. 23(a)(3), Union Defs.' Opp' n to Pls.' Mot. for Class Certification (Docket No. 106) at 5 n.3, 11-15, the Defendants misrepresent authority to support this proposition.  The Defendants' brief reads, " '[O]ne of the requirements for certification of class representatives is that their interests be wholly compatible with, and not antagonistic to, those whom they would represent.'"  *Id.* at 11, *quoting Gottlieb v. Wiles*, 11 F.3d 1004, 1007 (10th Cir. 1993).

It is for good reason that the Defendants omitted the introductory clause of the sentence they quoted in their brief.  In its entirety, the sentence reads, "In this regard, we note that one of the requirements for certification is that their interests be wholly compatible with, and not antagonistic to, those whom they would represent."  *Gottlieb*, 11 F.3d at 1007.  The issue that the *Gottlieb* Court's holding was explicitly regarding was absent class members appealing the settlement of a class action, which would obviously conflict with the interests of the plaintiffs who agreed to settle the case.  While ample authority exists for the proposition the Defendants sought to advance, *see, e.g., Pilots Against Illegal Dues*, 938 F.2d at 1134; *Gilpin*, 875 F.2d at 1313, they were content to quote language out of context under the apparent, and mistaken, impression that the Court would not read the cases cited in their briefs.  Because authority does exist for this proposition of law, the Defendants' brief does not make a false statement of law to the Court, for which sanctions would be appropriate.  FED. R. CIV. P. 11.  The conduct of the Defendants' counsel is nonetheless unprofessional as well as unethical.

the extent that FED. R. CIV. P. 23(a)(3) requires the named Plaintiffs' claims to be typical of those of the class members to ensure that efficient and economical case management, *Gen. Tel. Co. of the Southwest*, 457 U.S. at 158 n.13, the Court finds that this prerequisite has been satisfied. Insofar as the Rule requires typicality to guarantee that the interests of the absent class members are adequately represented, it will be discussed below.

### 5.  Adequacy of Representation

#### a.  Conflicts of Interest

"Rule 23(a) demands that the representative parties will fairly and adequately protect the interests of the class.  Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

As previously discussed, the Defendants allege that conflicts of interest exist both among the absent class members and between the class members and the named Plaintiffs.  The Defendants argue that these conflicts make the named Plaintiffs inadequate class representatives, both because the named Plaintiffs' claims are not typical of those of the absent class members as required by FED. R. CIV. P. 23(a)(3) and because the named Plaintiffs will not represent the interests of the class members adequately as required by FED. R. CIV. P. 23(a)(4).

The Defendants arguing that the named plaintiffs and their counsel have conflicts of interest

with the class members in an attempt to protect the interests of the absent class members and assist the Court in deciding the motion for class certification "is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."  *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).  The Defendants argument will therefore be viewed with scepticism.

The Defendants' argument has some merit, however, because "conflicts of interest between named parties and the class they seek to represent" will preclude class certification. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  In this regard, the Defendants put a great deal of stock into *Gilpin*, 875 F.2d 1310, which was quite similar to the present case.  The Defendant union was a party to that suit, while the plaintiffs in that case were represented by the National Right to Work Legal Defense Foundation, as the Plaintiffs here are.  In *Gilpin*, then-Chief Judge Posner noted a conflict of interest between the two types of employees, all of whom were union non-members, that made up the putative plaintiff class.  "The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members." *Id.* at 1313.  For that reason, the court found that the named plaintiffs could not adequately represent all of the class members and affirmed the trial court's refusal to certify the class.

The Defendants argue that the same division may be drawn among the employees who comprise the putative class in the present suit.  They argue that this constitutes a conflict of interest sufficient to render the named Plaintiffs, who the Defendants allege to belong to the former category, inadequate representatives of the absent class members.  The Defendants' reliance on *Gilpin* is misplaced, beyond the fact that its holding is not binding on this Court.

-11-

*Gilpin* was decided prior to *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991), which declared the government's "vital policy interest" in avoiding free riders. *Id.* at 519. The holding in *Gilpin* was based upon characterizing some class members as free riders who thereby had a conflict of interest with the class representatives, to whom the court attributed the goal of weakening or destroying the union. The Defendant union has argued, both in this case and in *Wessel*, that the entire fair share fee was properly collected in part because it was justified by the government's "vital policy interest" in avoiding free riders. *Id.* They now argue that the suit is not properly certifiable as a class action because there is a conflict of interest among the class of plaintiffs, some of whom are free riders.

The fair share fee in this case represented each non-member's share of the union's collective bargaining costs, and the union collected the fee from the Plaintiffs. In other words, both the named Plaintiffs and the potential class members paid their fair share of the union's collective bargaining costs. There are no free riders among the class members, and therefore no conflict of interest within the class or between the class representatives and the absent class members. Whatever logic *Gilpin* may have had prior to *Lehnert* has been lost since, at least in cases in which the union justifies its collection of fair share fees in part because it was by the government's "vital policy interest" in avoiding free riders. *Id.*

The Defendants also note that a Tenth Circuit panel cited *Gilpin* in *Pilots Against Illegal Dues*, 938 F.2d at 1134. Indeed it did, and for an entirely different proposition than that for which the Defendants cited the case. *Id.* In *Pilots Against Illegal Dues*, "[t]he district court concluded that the plaintiffs were inadequate representatives because one of the plaintiffs sent out a misleading letter to potential class members. Based on this episode, the court surmised that a conflict of interest

existed among potential class members." *Id.*  The Tenth Circuit then cited *Gilpin* for the unremarkable propositions that the party seeking class certification bears the burden of showing that the named plaintiffs are adequate class representatives and that the district court's determination of the class certification issue is reviewed only for an abuse of discretion. *Id.*[4]

The conflict that the Defendants have alleged based on the motivations of the absent class members, which was merely speculative and unsupported by evidence to begin with, has failed to materialize.  It does not exist in this case simply because it was present in *Gilpin*, which is distinguishable factually as well as legally after the *Lehnert* decision. *See Lehnert*, 500 U.S. at 519. As the Plaintiffs point out, the Defendants have failed to identify a single member of the Plaintiff class who opposes the relief sought or the goals the Defendants attribute to the Plaintiffs and their counsel.  The Defendant have failed to show that any conflict of interest actually exists.  Moreover, even if some class members do not share the named Plaintiffs' the motivation for the present litigation, that is insufficient alone to defeat class certification. *See Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) ("It is not fatal if some members of the class might prefer not to have violations of their rights remedied.") (internal quotation marks and citations omitted).

By the same token, the type of relief that the Plaintiffs seek is not itself determinative of whether a conflict of interest exists between the named Plaintiffs and the absent class members, and *Gilpin* is again distinguishable.  In *Gilpin*, the Court found that "[t]he 'restitution' remedy sought by the National Right to Work Legal Defense Foundation, which represents the nine named plaintiffs, is consistent with--and only with--the aims of the first type of employee," one who "wants

---

[4] The credibility of both the Defendants's counsel and the arguments they make has suffered by counsels' repeated and deliberate misrepresentation of case law and false statements of law to this Court.  The Defendants would be well suited to cease citing cases for propositions for which they do not stand.

to weaken and if possible destroy the union." *Gilpin*, 875 F.2d at 1313. The Defendants argue that, because the Plaintiffs here have also sought a full refund of the fair share fees collected by the union as well as punitive damages, the named Plaintiffs have a different interest than some class members.

With regard to the "restitution remedy," *id.*, the *Gilpin* Court found that the plaintiffs had paid less than the union was legally entitled to collect to fund the costs of its collective bargaining activities. Reimbursing the plaintiffs for the fees collected would therefore have conferred a windfall on the plaintiffs, and the court inferred that the plaintiffs would only seek such a remedy in order to inflict damage on the union. *Id.* In *Wessel*, by contrast, the Tenth Circuit found that it was not appropriate to refund the entire fair share fee to the Plaintiffs *as a remedy for the inadequate fair share notice*. *Wessel*, 299 F.3d at 1194-95 ("A union's *violation of procedural requirements* for the collection of fair share fees does not entitle nonmembers to a 'free ride....' ") (emphasis added).

In another, distinct claim for relief, however, the *Wessel* Plaintiffs alleged that the fair share fees were collected for an improper purpose, and the Court of Appeals agreed. *Id.* at 1196 ("We disagree with the district court's conclusion that the Union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee."). The Court remanded the case for this Court to hold a hearing to determine which portion of the fees was properly collected. *Id.* The Defendants bear the burden on remand of proving that the fees were collected for a lawful purpose. *Lehnert*, 500 U.S. at 519, 524. Should the Defendants fail to carry that burden, a full refund would be appropriate, *id.*, and the Court of Appeals did not foreclose such relief. *Wessel*, 299 F.3d at 1196. *Gilpin* is therefore not persuasive on this point.[5]

---

[5] It is generally inappropriate for a court to decide or consider the likelihood of success on the merits of a case when deciding a motion for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). However, courts may, when necessary, "probe behind the pleadings before coming to rest on the certification

The same is true of the punitive damages issue. The Defendants would have the Court believe that the absent class members, who chose not to join the union as was their right, would also choose not to recover such damages as a jury would find appropriate should the Plaintiffs prove that the Defendants intentionally violated the class members' constitutional rights. This is simply conjecture, not to mention illogical, and is insufficient to preclude class certification. Moreover, punitive damages are not designed to destroy the union. They are designed to punish a defendant for culpable behavior. If a jury finds that the union intentionally collected a greater amount of fair share fees than that to which it was entitled, which would constitute an intentional violation of the Plaintiffs' constitutional rights, then punitive damages would be appropriate. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Receiving punitive damages for such a violation would not impugn the motives of the class members or indicate that they desire to destroy the union.

Finally, the Defendants argue that union non-members who seek punitive damages against the union will weaken the union, which represents the non-members for the purposes of collective bargaining, if such damages are awarded. The Defendants conclude that the absent class members would not knowingly choose to damage their own collective bargaining agent, which would damage themselves in the process. This logic is extremely attenuated and again based only on the Defendants' speculation. The Plaintiffs--both the named Plaintiffs and the absent class members-- chose, for whatever reason, not to join the union. They could have joined the union at any time, were they actually interested in strengthening the entity each of them knows to be their collective bargaining representative. In fact, their decision not to join the union itself weakens the union, as the

---

question." *Gen. Tel. Co. of the Southwest*, 457 U.S. at 160. Because of the nature of the requirements of Fed. R. Civ. P. 23(a)(4) and the Defendants' arguments in opposition thereto, it was necessary in this case to consider matters beyond the pleadings on the motion for class certification to determine whether a conflict of interest actually existed.

union is only entitled to collect fair share fees from non-members and not full union dues. The class members may have any number of reasons for not joining the union, any of which may override their desire to support their collective bargaining representative, an assertion for which the Defendants have presented no factual support.

b.  Insufficient Understanding and Abdication of Responsibilities

The Defendants argue that the named Plaintiffs will not adequately represent the class because they do not understand the claims asserted, the factual basis on which the claims are based, or the relief sought, and have abdicated their responsibilities to class counsel.  The class representatives must have knowledge of and involvement in the suit to protect the interests of the absent class members, as well as the ability to assist counsel as to the manner in which the litigation will be conducted.  *Kelley v. Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 409 (W.D. Okla. 1990); *Aguirre*, 89 F.R.D. at 648.

Insofar as the Defendants assert that the named Plaintiffs are not aware of the factual basis for the claims asserted in the complaint and have abdicated their supervisory responsibilities to their attorneys, this argument, if true, could be sufficient to render the named Plaintiffs inadequate class representatives and defeat class certification.  To the extent that the Defendants claim that the named Plaintiffs cannot adequately represent the absent class members because they do not comprehend the claims asserted or the relief sought by the complaint, however, this argument is without merit.

It is true that the named plaintiffs are not attorneys, but they are not required to be.  It should come as no surprise that the Plaintiffs do not understand the complex constitutional issues involved

in the collection of fair share fees from the Plaintiffs. Indeed, many members of the class likely have no idea that their constitutional rights are implicated by the collection of the fair share fees. The parties' counsel cannot agree on what the Constitution requires of the union with regard to the collection of fair share fees. The named Plaintiffs are not required to recite those requirements during their deposition in order to represent the class. *See Murray v. Sevier*, 156 F.R.D. 235, 249 (D. Kan. 1994); *In re Am. Dental Laser Sec. Litig.*, 151 F.R.D. 81, 82 (E.D. Mich. 1993).

The Defendants seem to believe that the Plaintiffs themselves must decide how to phrase their complaint, what relief to seek, and how to draft pleadings and discovery responses in order to be adequate class representatives. That is not the law. The Defendants have not alleged that this litigation has been conducted differently than any other in terms of the level of involvement of the clients. "Generally, as long as the plaintiffs, as class representatives, know something about the case, even though they are not knowledgeable of the complaint's specific allegations, the class should be certified." *Lerner v. Haimsohn*, 126 F.R.D. 64, 67 (D. Colo. 1989).

The Defendants' argument unravels upon inspection of the legal claims in the complaint. The Plaintiffs claim, and the Defendants stipulated in *Wessel*, that the original fair share notice was legally inadequate, violating the Plaintiffs' constitutional rights. Non-members must be given "sufficient information to gauge the propriety of the union's fee" so that they may object to the fee if they consider it improper. *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 306 (1986). Because the Plaintiffs here were not given that information as required by law, they could not possibly intelligently consider the fee improper or object to it. They had no way to evaluate the propriety of the fee.

The Defendants' backward logic is alone sufficient for the Court to reject their argument, but

their unclean hands only reinforce the Court's decision to do so.  It was the union's failure to meet its constitutional responsibility to provide the Plaintiffs with "sufficient information to gauge the propriety of the union's fee," *id.*, that kept the Plaintiffs from objecting to the fair share fee.  The Defendants will not now be permitted to argue that the Plaintiffs do not understand their claims that the union's notice was improper, that the union deducted an inappropriate amount of fair share fees, or collected those fees for an improper purpose.  Of course they don't.  The Defendants did not provide the Plaintiffs with the information they were required by law to provide, which would have allowed the Plaintiffs to judge the propriety of the fee.  How could the Plaintiffs understand or object to something the notice should have, but did not, include?

The Defendants' claim that the named Plaintiffs lack an understanding of the factual basis underlying their claims gives the Court greater pause.  This argument is inherently related to the Defendants' argument that the Plaintiffs do not comprehend the claims in their complaint or the relief sought, however.  The legal claims asserted will necessarily determine what facts are material to the suit.  An inability to discern which facts support a particular claim should not be fatal to class certification.  The named Plaintiffs have displayed a sufficient understanding of the facts and issues in this case to fairly and adequately represent the interests of the class members.

### c.  Class Counsel

Finally, the Defendants argue that the Plaintiffs' counsel will not adequately represent the absent class members, and class certification should be denied on that ground.  Formerly, the competency and conflicts of interest of the attorneys representing the party seeking class certification were factors to be evaluated is assessing whether the class representatives would fairly and

adequately represent the class for the purposes of FED. R. CIV. P. 23(a)(4). *Amchem Prods.*, 521 U.S. at 626 n.20.  Rule 23 was amended on December 1, 2003, however.  Under the amended Rule, class counsel must still establish that they will fairly and adequately represent the class, but the Court appoints competent counsel only after the class has been certified.  FED. R. CIV. P. 23(g).  The obvious implication of the amendment is that establishing that class counsel will fairly and adequately represent the class members is no longer a prerequisite to class certification.  The Defendants arguments regarding the Plaintiffs' attorneys remain relevant to the appointment of class counsel, FED. R. CIV. P. 23(g)(1)(B), but no longer bear on the adequacy of representation prerequisite of FED. R. CIV. P. 23(a)(4).

6.  Conclusion

For the reasons discussed above, the Court finds that the Plaintiffs have satisfied the Rule 23(a) prerequisites to class certification.  So long as the suit fits one of the Rule 23(b) classifications, the suit should therefore be certified as a class action.

B.  Rule 23(b) Classification

The Plaintiffs argue that this suit qualifies for class certification under FED. R. CIV. P. 23(b)(1)(A), 23(b)(2), and 23(b)(3).  Rule 23(b)(1)(A) allows a class action to be maintained where "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  FED. R. CIV. P. 23(b)(1)(A).

Certification pursuant to Rule 23(b)(1)(A) is generally not appropriate in cases in which the primary relief sought is monetary damages. 3D MOORE'S FEDERAL PRACTICE, 23.41[6][a] (Matthew Bender 3d ed.) (citing numerous cases). The Plaintiffs assert that the damages they seek are merely incidental to the declaratory and injunctive relief also requested, but the Court is not persuaded. The fact that the Plaintiffs voluntarily dismissed the class allegations in *Wessel* when this Court denied them leave to amend their complaint to add the punitive damages claim belies their argument that money damages are not the primary relief sought. In addition to the punitive damages claim, the third claim for relief seeks substantial monetary damages. Furthermore, seeking a declaratory judgment that the Plaintiffs' constitutional rights were violated in an action pursuant to 42 U.S.C. § 1983 is arguable merely a means to attain attorney's fees pursuant to 42 U.S.C. § 1988. The Court finds that the primary relief sought by this suit is monetary damages. Certification under FED. R. CIV. P. 23(b)(1)(A) is therefore not appropriate in this case.

For the same reason, the Court rejects the Plaintiffs' argument that the suit should be certified as a class action under FED. R. CIV. P. 23(b)(2). This is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id.* Here, the Plaintiffs claims involve the Defendants distribution of the fair share notice to all class members, the collection of fair share fees from all class members, and the constitutionality of the indemnification clause in the Fair Share Resolution that is applicable to all class members. Again, however, suits in which the primary relief sought is monetary damages are generally not properly certified under Rule 23(b)(2). 3D MOORE'S FEDERAL PRACTICE, 23.43[3][b] (Matthew Bender 3d ed.) (citing numerous cases).

Where monetary damages are the predominate remedy sought, certification is usually only appropriate pursuant to FED. R. CIV. P. 23(b)(3).  Before a suit can be certified pursuant to that provision, the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."  FED. R. CIV. P. 23(b)(3).

"There is no precise test for determining whether common questions of law or fact predominate, however.  Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved."  3D MOORE'S FEDERAL PRACTICE, 23.45[1] (Matthew Bender 3d ed.) (citation omitted).  *See also Tedesco v. Mishkin*, 689 F. Supp. 1327, 1334 (S.D.N.Y. 1988).  As discussed previously, the Plaintiffs' claims are based on the actions of the Defendants, not those of the Plaintiffs.  The Defendants issued a legally inadequate fair share notice, which was distributed to each class member.  The Fair Share Resolution contained an indemnification clause the Court of Appeals found to be void as contrary to public policy.  If more than the appropriate fair share fee was collected from the non-members, or if the fees were collected for unlawful purpose, that was true for each class member.[6]  The Defendants' practices therefore affected each class member in the same

---

[6] Again, it is generally inappropriate for a court to decide or consider the likelihood of success on the merits of a case when deciding a motion for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  However, in order to determine whether "the questions of law or fact common to the members of the class

manner.  The common questions of both law and fact are central, if not exclusive, to each class member's claims.  Each class member therefore has little "interest...in individually controlling the prosecution or defense of separate actions."  FED. R. CIV. P. 23(b)(3).

Secondly, with the exception of the *Wessel* suit, there has been no other "litigation concerning the controversy already commenced by or against members of the class."  FED. R. CIV. P. 23(b)(3). The nature of that suit, i.e. the unusual circumstances presented by the filing and subsequent withdrawal of the class allegations, do not show that the common questions of law or fact in this case do not predominate.  Third, any litigation of these claims will take place in this forum, as venue is not appropriate in any other.  28 U.S.C. § 1391(b).  "[T]he desirability or undesirability of concentrating the litigation of the claims in the particular forum," FED. R. CIV. P. 23(b)(3), therefore does not weigh against class certification.

Finally, each class member's claims are based upon the same theories of liability, and will require the same proof.  In reality, the only differences among the class members' claims, if any, will be the amount of damages.  Management of a class action will therefore be no more difficult than managing a suit brought by a single plaintiff, or small group of them, such as the *Wessel* suit.  This is precisely the sort of case for which Rule 23(b)(3) was designed.  The Court therefore finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

Before certifying the class, the Court must also find "that a class action is superior to other

---

predominate over any questions affecting only individual members," FED. R. CIV. P. 23(b)(3), it is obviously necessary for a court to inquire into the legal claims and the factual bases for them.  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).  Courts may, when necessary, "probe behind the pleadings before coming to rest on the certification question."  *Gen. Tel. Co. of the Southwest*, 457 U.S. at 160.

available methods for the fair and efficient adjudication of the controversy." *Id.*  The first factor to consider is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." *Id.*  The claims in this suit are not particularly sizeable individually.  A single plaintiff therefore has little interest in controlling the litigation of his suit independently of the class. While the *Wessel* suit was filed separately from this case, the tactical reasons for dismissing the class allegations in that case and then filing this suit as a class action are obvious.  There have been no other individual suits filed by members of the class, which again indicates that the class members have little, if any, interest in controlling the prosecution of his suit separately from the class.  *E.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 60 (N.D. Ill. 1996); *Walco Invs. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996); *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669 (N.D. Ohio 1992); *Tedesco*, 689 F. Supp. at 1336; *Riordan v. Smith Barney*, 113 F.R.D. 60, 66 (N.D. Ill. 1986).  Furthermore, no class member has stepped forward to oppose class certification, which is also persuasive.  *E.g., Riordan*, 113 F.R.D. at 66.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class."  FED. R. CIV. P. 23(b)(3).  As stated previously, the *Wessel* suit was filed separately from, and prior to, this case.  However, given the rulings of this Court and the Court of Appeals on the Plaintiffs' motion for leave to amend their complaint to add the claim for punitive damages, *Wessel*, 299 F.3d at 1196, the nature of that litigation, although independent of this suit, does not indicate that a class action is not the superior method of litigating these issues.  As *Wessel* is the only other suit that has been filed regarding these claims, the extent of the litigation commenced by members of the class indicates that a class action is superior to separate suits.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." FED. R. CIV. P. 23(b)(3). Again, the litigation of these claims will take place in this forum; venue is not appropriate in any other. 28 U.S.C. § 1391(b). This factor therefore does not weigh against certification.

The fourth factor is "the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3). As stated above, the Court anticipates little difficulty in managing the class action. Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen*, 417 U.S. at 164. The class is finite and the identities of each class member are known to the Defendants, if not to the Plaintiffs, making management of the suit far simpler. *Tedesco*, 689 F. Supp. at 1337; *Riordan*, 113 F.R.D. at 66. Providing them with the mandatory notice required by FED. R. CIV. P. 23(c)(2)(B) will not create significant difficulty. The entire class is located in the Albuquerque area, making communication with the class far simpler than in most cases.

Moreover, each Plaintiffs' claims are so similar that certifying this suit as a class action will present little, if any, difficulty that will not be presented by a series of individual suits filed by class members. While any calculation of damages that may be required could differ somewhat among the class members, it will also be elementary. Even the calculation of damages therefore does not create significant management difficulties. *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 531 (W.D. Pa. 1994); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 5 (D.D.C. 1992); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977). The Court does not anticipate that each class member's recovery will be so significant as to indicate that a class action is not the superior method of litigation. *See Amchem Prods., Inc.*, 521 U.S. at 617.

For the reasons discussed above, the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[7] The suit will therefore be certified as a class action pursuant to FED. R. CIV. P. 23(b)(3).

## C.  Nature of the Suit

"An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  FED. R. CIV. P. 23(c)(1)(B).

## 1.  Definition of the Class and Its Claims

The class in this case comprises "all City employees represented by Local 624 who are [not] or were not members, at some time since fair share deductions began, and have had and/or will have union fees deducted from their wages, except for the *Wessel* plaintiffs."  Pls.' Compl. (Docket No. 1) ¶ 15.  The Plaintiffs' complaint contained six claims for relief, but the parties have stipulated to the dismissal of the first and fourth claims for relief.  The remaining claims are: the Defendants violated the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by collecting fair share fees without adequate notice of their basis; the Defendants violated the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by

---

[7] The Court is quite cognizant that the Plaintiffs must affirmatively establish their adequacy of representation as a prerequisite to certification.  FED. R. CIV. P. 23(a)(4).  It is worth noting, however, that certifying the class pursuant to FED. R. CIV. P. 23(b)(3) will have the consequential effect of negating the Defendants' arguments regarding the conflicts of interest they alleged some class members had with the named Plaintiffs and their attorneys. The Court previously found that those conflicts did not exist.  But if, as the Defendants argued but failed to prove, some class members feel that this litigation would weaken the union and they do not wish to do so, or if they do not wish to seek punitive damages, they may elect to opt out of the suit entirely.

collecting fair share fees for unauthorized purposes; the indemnification clauses of the 1997 Memorandum of Understanding and the 2000-2003 Collective Bargaining Agreement are constitutionally invalid and void as contrary to public policy; and the Plaintiffs are entitled to punitive damages because the Defendants violated the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 intentionally or in reckless or callous indifference to the Plaintiffs' federally protected rights.

## 2.  Class Counsel

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1)(A).  "An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).  In this regard, the Defendants arguments that the Plaintiffs' attorneys have conflicts of interest with some class members remain relevant to the choice of counsel appointed to represent the class.  However, to reiterate, class counsel fairly and adequately representing the class is no longer a prerequisite to class certification.  The amended Rule 23 expressly states that only after the class is certified does the Court appoint class counsel.  FED. R. CIV. P. 23(g)(1)(A).

The Plaintiffs are represented by the National Right to Work Legal Defense Foundation, a single-issue, non-profit firm.  The Defendants argue that "it is clear from the record, as well as from the manner in which this litigation has been conducted, that the plaintiffs and their counsel do not adequately represent, and will not protect the interests of, the proposed class."  Union Defs.' Opp'n to Plfs.' Mot. for Class Certification at 4.  The Defendants contend that Plaintiffs' counsel are conducting this litigation to effectuate the goals of the Foundation, not those of the class, and that

it is the intent and motive of the Plaintiffs' counsel to destroy the union entirely. The Defendants direct the Court's attention to fund-raising literature from the Foundation and other material, which they argue shows that the Foundation uses class action suits as a vehicle for weakening organized labor and advancing the right to work cause.

Both the named Plaintiffs and Mr. LaJeunesse have a constitutional right to associate with the Foundation. Moreover, all the Defendants have really shown is that Plaintiffs' counsel want to win this lawsuit. Our system of justice is adversarial in nature and depends upon each party's legal representative doing his best to win the case. The Defendants do not allege that Plaintiffs' counsel has acted unethically or otherwise inappropriately, as the Defendants' attorneys have repeatedly done themselves. The Plaintiffs' attorneys' desire to win this lawsuit, whatever their motives for doing so, only ensures that it will be vigorously litigated, as it has been to this point.[8]

Finally, the Defendants allege that the Plaintiffs' counsel is conducting this litigation in part to "strike a blow for taxpayers everywhere," as was written in a Foundation fund-raising letter. They argue that the Plaintiffs are therefore not representing the interests of the absent class members, who they again presume would not intentionally weaken their own collective bargaining representative

---

[8] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002), was decided before the pertinent amendments to Rule 23 were enacted. That court therefore analyzed the competency of class counsel and their conflicts of interest in the context of the adequacy of representation prerequisite of FED. R. CIV. P. 23(a)(4). The amended Rule 23 requires that the attorneys appointed as class counsel will "fairly and adequately represent the interests of the class," FED. R. CIV. P. 23(g)(1)(B), which is similar to the language found in the adequacy of representation prerequisite of FED. R. CIV. P. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class"). The Court therefore finds the *Rutter & Wilbanks Corp.* Court's discussion of class counsel's responsibilities persuasive on the issue of the requirements of FED. R. CIV. P. 23(g)(1)(B).

In *Rutter & Wilbanks Corp.*, the Court of Appeals held, "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp.*, 314 F.3d at 1187-88. Because this Court finds that the Plaintiffs' attorneys will prosecute the action vigorously on behalf of the class, even if they will do so because of the motives the Defendants allege they possess, the Defendants' argument does not suggest that the Plaintiffs' attorneys should not be appointed class counsel. Indeed, it may show that they will prosecute the action more vigorously that other attorneys would.

by suing the union, particularly for punitive damages. This argument rings especially hollow. To reiterate, the Defendants have not identified any members of the Plaintiff class who are opposed to the lawsuit or to seeking punitive damages, or who actually desire not to weaken the union. But, even if the Defendants' argument is true, it does not necessarily present a conflict of interest with the class members. After all, the class members are taxpayers; they are not union members. The Defendants have not established that the Plaintiffs' attorneys have an impermissible conflict of interest. The Court finds that the Plaintiffs' counsel will fairly and adequately represent the interests of the class.

"In appointing class counsel, the court

(i) must consider:

• the work counsel has done in identifying or investigating potential claims in the action,

• counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

• counsel's knowledge of the applicable law, and

• the resources counsel will commit to representing the class;

(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class...."

FED. R. CIV. P. 23(g)(1)(C).

The amended Rule includes a presumption that the attorneys who have represented the party moving for class certification up to that point will be appointed as class counsel, because it requires the Court to consider "the work counsel has done in identifying or investigating potential claims in

the action." *Id.* The attorneys who represent the party seeking class certification will almost invariably be the only attorneys who have done any work at all to identify or investigate potential claims in the action, or for any other purpose for that matter. This factor carries the same presumption in this case, as the Plaintiffs' counsel have done significant work in this case and in *Wessel* over a period of several years. No other attorneys have done any work to identify of investigate potential claims.

The second factor requires the Court to consider "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action." *Id.* This factor also favors appointing the Plaintiffs' attorneys as class counsel in this case. Mr. LaJeunesse and the National Right to Work Legal Defense Foundation have represented numerous plaintiff classes, often in cases very similar to this one. Decl. of Raymond J. LaJeunesse in Supp. of Mot. for Class Certification (Docket No. 95) at 2-5. The Court finds that the Plaintiffs attorneys have sufficient experience to fairly and adequately represent the class.

By the same token, the third factor, "counsel's knowledge of the applicable law," FED. R. CIV. P. 23(g)(1)(C), weighs in favor of appointing the Plaintiffs' attorneys as class counsel. The National Right to Work Legal Defense Foundation has played a significant role in shaping the law applicable to this case, and the Plaintiffs' attorneys have ample knowledge of it to represent the class in this case. Decl. of Raymond J. LaJeunesse in Supp. of Mot. for Class Certification (Docket No. 95) at 2-5.

The fourth factor requires the Court to consider "the resources counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(C). The final factor again favors appointing the Plaintiffs' attorneys to represent the class. The National Right to Work Legal Defense Foundation

has resources most other attorneys would be unable to muster in representing the class, and they are clearly sufficient to guarantee fair and adequate representation.

The amended Rule 23 states that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(C)(ii). However, the Rule requires that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). "Other matters pertinent to counsel's ability to fairly and adequate represent the interests of the class" would therefore be relevant only if there are multiple attorneys who wish to represent the class, all of whom can establish that they will do so fairly and adequately. FED. R. CIV. P. 23(g)(2)(B). In this regard, the Court must consider the fact that no other attorneys have applied to represent the class.

In conclusion, the Court finds that the Plaintiffs attorneys have established that they will fairly and adequately represent the class. Conversely, the Defendants have not established that the Plaintiffs' attorneys have a conflict of interest with the class members. The Defendants' arguments are based entirely on speculation; there is no evidence in the record to support them. The Plaintiffs' attorneys are the only attorneys who have worked on the case to this point, which is a factor the Court must consider. They are experienced in class action suits and should probably be considered experts in this area of law. They also have the resources necessary to conduct this type of litigation. Furthermore, they are the only attorneys who have expressed a desire to represent the Plaintiff class, and will likely better meet the criteria of FED. R. CIV. P. 23(g) than any others who may express that desire in the future.


**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion for Class Certification is

**granted**.

 **IT IS FURTHER ORDERED** that Raymond J. LaJeunesse, Jr., and Robert L. Pidcock are hereby appointed, pursuant to FED. R. CIV. P. 23(g)(1)(A), to serve as class counsel.

 **IT IS FURTHER ORDERED** that the Plaintiffs' counsel submit a draft of the class notice required by FED. R. CIV. P. 23(c)(2)(B) to counsel for the Defendants.  The parties shall then jointly submit the notice to the Court for its approval.

 **IT IS FURTHER ORDERED** that the following pleadings in *Wessel, et al., v. City of Albuquerque, et al.*, No. CIV 00-0065 LH/KBM-ACE, be made a part of the record in the case at bar: AFSCME Local 624's Pre-Hearing Memorandum Regarding the December 12, 2002 Hearing (Docket No. 146), Plaintiffs' Bench Memorandum (Docket No. 147), Transcript of Evidentiary Hearing on Remand (Lodged in Separate File Folder), Post-Hearing Brief of Defendant AFSCME Local 624 Regarding Disposition of the Remanded Issue (Docket No. 154), and Plaintiffs' Post-Trial Brief (Docket No. 155).

 **IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**